IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RICHARD WALTON on behalf of himself and all others similarly situated,<br><br>      Plaintiffs,<br><br><br><br>                    vs.<br><br><br>U.S. BANK, U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP, OXFORD MANAGEMENT SERVICES, WEST VALLEY CITY JUSTICE COURT, SUPREME COURT OF THE STATE OF UTAH, GODFREY TRUCKING INC.,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br><br><br><br>Case No. 2:09-CV-931<br>Judge Dee Benson |

Plaintiff Richard Walton filed the instant lawsuit against U.S. Bank National Association[1]

("U.S. Bank"), Oxford Management Services, West Valley Justice Court, the Supreme Court of

the State of Utah, and Godfrey Trucking, Inc.  Stated generally, the plaintiff claims that the

_____

[1]Although plaintiff names as defendants U.S. Bank, U.S. Bank National Association and U.S. Bancorp, according to the Complaint, the only entity with whom plaintiff had a relationship was U.S. Bank National Association, the entity that maintained his checking account. See Compl. ¶¶ 5, 23.  Accordingly, plaintiff's claims against U.S. Bank and U.S. Bancorp are hereby dismissed.  For purposes of this decision the court will use "U.S. Bank" to refer to U.S. Bank National Association.

defendants violated federal and California law by garnishing money from his bank account that is primarily funded with Social Security payments which are exempt from such attachment. Each of the defendants, with the exception of Godfrey Trucking, have filed independent motions to dismiss plaintiff's action in its entirety. On September 1, 2010, the court heard oral argument on each of the motions to dismiss. Having considered the parties' briefs, oral argument, and the relevant law, the court enters the following Memorandum Decision and Order.

### BACKGROUND

Plaintiff Richard Walton is a California resident. He has been a customer of U.S. Bank since the early 1990s, and holds a joint account at U.S. Bank with his son, Richard E. Walton, Jr. ("Walton Jr."). (Compl. ¶¶ 23, 31.) Deposits into plaintiff's joint account come from various sources, but consist mainly of plaintiff's veteran's pension and his Social Security benefits.

In 2007, defendant Godfrey Trucking, a Utah Corporation, obtained a judgment in the amount of $2,785.68 against Walton Trucking & Logistics and Richard Walton Jr. in the West Valley Justice Court of the State of Utah. In an effort to collect on the judgment, defendant Godfrey Trucking obtained a writ of garnishment from the justice court and served the writ on U.S. Bank. The writ of garnishment was obtained in accord with the procedures set forth in Rule 64D of the Utah Rules of Civil Procedure – a rule promulgated by the Supreme Court of the State of Utah.

Having been served with the writ of garnishment, U.S. Bank complied and released $1774.77 from the joint account plaintiff holds with Walton Jr. After removal of the funds from plaintiff's account, plaintiff incurred various processing, overdraft, and negative balance fees,

which led U.S. Bank to pursue collection of these fees through Oxford Management Services, a Michigan Corporation.

Plaintiff made phone calls to U.S. Bank, the West Valley Justice Court, and Godfrey Trucking in an attempt to secure release of the funds on the grounds that (1) he was not the same "Richard Walton" identified in the Utah judgment, and (2) the funds in his account were exempt from garnishment. When plaintiff's funds were not released, plaintiff filed the instant suit claiming that each of the defendants had violated federal and/or California law by improperly garnishing funds which are exempt from such attachment. As explained above, each of the defendants, with the exception of Godfrey Trucking, have filed independent motion to dismiss.

With the exception of defendant Oxford Management, the defendants' motions to dismiss have been brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2] To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While the standard does not require "detailed factual allegations," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Hall v. Witteman, 584 F.3d 859, 863 (10th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1951). Complaints that plead facts that are "merely consistent with a defendant's liability" fail because they "stop[] short of the line between possibility and plausibility of entitlement to relief." Id.; Iqbal, 129 S. Ct. at 1949.

_____

[2]Defendant Oxford Management's motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b) for lack of jurisdiction.

**DISCUSSION**

**A. U.S. Bank's Motion to Dismiss**

Plaintiff's Complaint sets forth seven causes of action against U.S. Bank. Plaintiff's main focus, however, centers on allegations that U.S. Bank violated 42 U.S.C. § 1983 and violated the anti-attachment provision of the Social Security Act, 42 U.S.C. § 407(a). In addition, plaintiff alleges multiple violations of the California Civil Code, breach of contract, and fraud.

**1. Violation of 42 U.S.C. § 1983**

First, plaintiff claims that by attaching funds in plaintiff's account pursuant to a writ of garnishment from the West Valley Utah Justice Court, U.S. Bank deprived plaintiff of his rights under 42 U.S.C. § 1983. (Pl.'s Compl. at 12.) U.S. Bank asserts that plaintiff's § 1983 claim fails as a matter of law because the bank's alleged conduct does not constitute action "under color of state law" and is, therefore, not actionable under § 1983. (U.S. Bank's Mem. In Supp. at 5.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009). While state or government officials may be held liable under § 1983, "private conduct that is not fairly attributable to the State is simply not actionable under § 1983." Id.; see also Scott v. Hern, 216 F.3d 897, 906 (10th Cir. 2000). In order to allege that private conduct is "fairly attributable to the state," the complaint must show that the private party is "a person who

4

may fairly be said to be a state actor.  This may be because he is a state official, because he has

acted together with or has obtained significant aid from state officials, or because his conduct is

otherwise chargeable to the State." <u>Lugar v. Edmonson Oil, Co.</u>, 457 U.S. 922, 937 (1982).

Having thoroughly reviewed the Complaint in this case, the court finds that plaintiff has

failed to show state action sufficient to maintain a § 1983 claim against U.S. Bank.  There is no

allegation that U.S. Bank is a state actor and plaintiff has not alleged any fact that would support

a conclusion that U.S. Bank, a private party, "may fairly be said to be a state actor." <u>Lugar</u>, 457

U.S. at 937.  U.S. Bank was not the party responsible for seeking or obtaining the writ of

garnishment, but rather was acting in the capacity of a neutral, thirty-party garnishee, obligated

by law to comply with the writ's instructions.  Under these circumstances, U.S. Bank's

compliance with the Utah garnishment statute does not amount to conduct that is "fairly

attributed to the state." <u>See</u> <u>Diefenderfer v. Office of Recovery Servs.</u>, No. 98-4230, 185 F.3d

873, 1999 WL 446012, at *2 (10th Cir. July 1, 1999) (unpublished) (affirming dismissal of §

1983 claim against private employer who garnished plaintiff's wages pursuant to a court order

because "private actors who merely comply with state law are not thereby acting under color of

state law").  Because plaintiff has failed to show that U.S. Bank acted under color of state law,

his § 1983 claim against U.S. Bank fails as a matter of law.

### 2.  <u>Violation of 42 U.S.C. § 407(a)</u>

Plaintiff's second claim alleges that U.S. Bank violated 42 U.S.C. § 407(a) by "levying

[exempt] funds which were contained in plaintiff's account."  (Compl. at ¶54.)  Section 407(a) –

the Anti-Attachment Provision of the Social Security Act – prohibits creditors and other

claimants from using legal process to reach Social Security benefits. See Philpott v. Essex

County Welfare Bd., 409 U.S. 413, 415-17 (1973). U.S. Bank asserts, however, that plaintiff's

second cause of action fails as a matter of law because nothing within § 407(a) creates a cause of

action against a neutral third-party garnishee, which does not itself attempt to use legal process

to gain access to Social Security benefits. Having reviewed the cases and legal authority cited

by both plaintiff and defendant, the court agrees with U.S. Bank that nothing within § 407(a)

creates a private right of action against a neutral third-party garnishee such as U.S. Bank in this

case.

As the Supreme Court has stated, "[t]he fact that a federal statute has been violated and

some person harmed does not automatically give rise to a cause of action in favor of that

person." Touche Ross & Co. V. Redington, 442 U.S. 560, 568 (1979). Only Congress can

create a private right of action to enforce federal law. Alexander v. Sandoval, 532 U.S. 275, 286

(2001). And courts rarely impute to Congress an intent to create a private right of action where a

statute does not include explicit right- or duty-creating language. Gonzaga University v. Doe,

536 U.S. 273, 284 n.3 (2002).

Looking at the language of the statute itself, nothing in the language of § 407 expressly

creates a private right of action, and nothing in § 407 suggests that Congress intended to create a

private right of action. Moreover, the majority of cases that have addressed this issue have

explicitly concluded that § 407 does not create a private right of action against intermediaries,

such as U.S. Bank, who have done nothing more than follow a court order they had no role in

obtaining. See Harris v. Prudential Ins. Co., Slip Copy, 2010 WL 918304 (N.D. Ohio March 10,

2010) ("[Section 401(a)] creates no private right of action."); <u>Alexander v. Bank of America</u>,

2007 WL 3046637 (W.D. Mo. Oct. 17, 2007) (unpublished); <u>see also</u> <u>Gorstein v. World Savings</u>

<u>Bank</u>,110 Fed. Appx. 9, 2004 WL 1923596 (9th Cir. Aug. 27, 2004) (unpublished) ("Although

section 407(a) provides strong protection to Social Security beneficiaries, it does not entitle them

to sue intermediaries who have done nothing more than follow a court order that they had no role

in obtaining."); <u>Christensen v. Arizona Central Credit Union</u>, 2008 WL 4853414 (D. Ariz. Nov.

10, 2008) (unpublished) (concluding that because section 407(a) is meant to protect social

security recipients from creditors, plaintiffs failed to state a claim under § 407(a) against a credit

union acting as a third-party garnishee).

 Contrary to plaintiff's assertion, the Tenth Circuit's decision in <u>Tom v. First American</u>

<u>Credit Union</u>, 151 F.3d 1289 (10th Cir. 1998) does not compel a different result. Although <u>Tom</u>

does address a § 407(a) claim against a credit union, the credit union in <u>Tom</u> was acting in the

capacity of a creditor, and was found to have violated § 407(a) because it used social security

funds in plaintiff's bank account to satisfy a loan owed to the credit union itself. <u>See</u> <u>id.</u> at 1291.

Conversely, in this case, U.S. Bank was not acting in the capacity of a creditor attempting to

satisfy a loan owed to itself, but rather was merely complying with a court order obtained by a

third party. <u>See</u> <u>Lopez v. Washington Mut. Bank, FA</u>, 302 F.3d 900, 903 (9th Cir. 2002)

("Section 407(a) was designed to protect social security beneficiaries and their dependents from

the claims of *creditors*." (emphasis added)).

 Moreover, to the extent plaintiff now appears to make a new and somewhat different

argument in his Memorandum in Opposition – claiming that U.S. Bank violated § 407(a) when it

"seized and set off *its own* alleged debts and fees against statutorily exempt funds" – plaintiff's new argument is likewise unavailing. The fees of which plaintiff complains were not levied as an attempt to collect a debt owed by plaintiff to U.S. Bank, but rather were fees charged as part of the practice of maintaining an account. The collection of such fees is not the equivalent of the collection of a debt, and therefore the facts of this case remain outside the parameters of <u>Tom</u>. <u>See, e.g.</u>, <u>Miller v. Bank of America</u>, 207 P.3d 531, 540 (Cal. 2009) (quoting letter from the Office of the Comptroller of the Currency and providing that national banks may "establish, charge and recover overdraft fees from depositors' accounts" without running afoul of laws that protect social security benefits); <u>see also, e.g.</u>, <u>Huggins v. Pataki</u>, 2002 WL 1732804, at **4-5 (E.D.N.Y. July 11, 2002) (unpublished) (dismissing plaintiff's § 407 claim against bank that charged a garnishment processing fee because the fee charged was not an attempt to collect a debt).

Finally, the Social Security Administration, which has the authority to interpret laws dealing with social security benefits and to promulgate rules and regulations thereunder, <u>see</u> 42 U.S.C. 405(a), has interpreted the garnishment exemption in 407(a) as an affirmative defense to be raised by a beneficiary after a hold has been placed on an account pursuant to a garnishment order, rather than as a bar against the imposition of the freeze in the first place. <u>See</u> Social Security Administration, Program Operations Manual System, GN 02410.001, <u>available</u> <u>at</u> https://secure.ssa.gov/apps10/poms.nsf/lnx/0202410001 ("If a beneficiary is ordered to pay his/her benefits to someone else, or his/her benefits are taken by legal process, he/she can use section [407] as a personal defense against such actions.").

For these reasons, the court concludes that § 407(a) does not create a private right of action against a third-party intermediary, such as U.S. Bank in this case, who has done nothing more than follow a court order it had no role in obtaining. Accordingly, plaintiff's claim that U.S. Bank violated 42 U.S.C. § 407(a) fails as a matter of law.

### 3. Remaining Claims Against U.S. Bank

With regard to plaintiff's remaining claims against U.S. Bank, the court finds that they are insufficiently pled and fail to satisfy the requirements of Iqbal and Twombly. Moreover, even if the remaining claims against U.S. Bank satisfied the requisite pleading standard, the court would nonetheless decline to exercise supplemental jurisdiction over these non-federal claims.

For these reasons, U.S. Bank's Motion to Dismiss is granted.

## B. West Valley Justice Court's Motion to Dismiss

With regard to the West Valley City Justice Court (the "City"), plaintiff asserts, under § 1983, that the City violated his federal constitutional and statutory rights by enforcing the provisions of Utah Rule of Civil Procedure 64D (Utah's garnishment procedure) which he claims violates both the Due Process and Supremacy Clauses of the United States and Utah Constitutions. In response, the City points out that by plaintiff's own allegations the Utah Supreme Court, not the City, enacted the allegedly unconstitutional rule that caused the § 1983 violations. And, without alleging that a City policy or custom caused the injury asserted in his complaint, the plaintiff cannot prove his municipal liability claim against the city and it should be dismissed.

It is well established that a municipality is not vicariously liable under § 1983 for the actions of its employees. Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978). "Instead, the plaintiff must show 'that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'" Ledbetter v. City of Topeka, Kansas, 318 F.3d 1183, 1189 (10th Cir. 2003) (quoting Camfield v. City of Oklahoma City, 248 F.3d 1214, 1229 (10th Cir. 2001)). Having considered the pleadings and relevant law, the court concludes that plaintiff has failed to meet this burden.

First, plaintiff has failed to plead facts sufficient to establish that the City had an unconstitutional policy or custom. Plaintiff does not plead that Rule 64D is a City policy. Rather, he acknowledges in his Complaint that the "policy" at issue in this case is Utah Rule of Civil Procedure 64D – a state policy. The mere enforcement of a state law by a municipality does not give rise to § 1983 municipal liability. See, e.g., Surplus Store & Exchange, Inc. v. City of Delphi, 928 F.2d 788 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible . . . than the "policy" of enforcing state law. If the language and standards from Monell are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality."). Because plaintiff has failed to allege or identify any City policy that violates federal constitutional or statutory law, there is no basis for municipal liability.

Moreover, plaintiff cannot establish that the allegedly unconstitutional policy of simply enforcing Rule 64D was carried out by an official with final policy-making authority. In

Ledbetter v. City of Topeka, 318 F.3d 1183, 1189 (10th Cir. 2003), the Tenth Circuit stated: "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 1189. In this case, the judicial authority held by municipal judges in Utah is dictated by statute. See, e.g., Utah Code Ann. § 78A-2-104(4)(a). Of significance in this case is the requirement that municipal court judges comply with "uniform rules" – such as the Rules of Civil Procedure – established for the operation of Utah courts. Given that the City did not enact Rule 64D – the "policy" that allegedly violated plaintiff's rights – combined with the fact that the justice court is required by law to comply with uniform rules, there can be no set of facts pleaded or proven by plaintiff that would show that the City had the power or authority to deviate from Rule 64D. Without this power or authority, it cannot be said that any City employee acted as a municipal policy-maker with authority sufficient to subject the City to municipal liability.

For these reasons, the plaintiff's § 1983 claim against the City fails as a matter of law, and the City's motion to dismiss is granted.

## C. The Supreme Court of the State of Utah's Motion to Dismiss

Plaintiff alleges that in enacting Rule 64D – Utah's garnishment provision – the Utah Supreme Court created a rule which violates the Due Process and Supremacy Clauses of the United States Constitution and deprived plaintiff of his rights. In response, the Utah Supreme Court asserts that plaintiff's claim against it must be dismissed because the allegations involve the Utah Court's rule-making power, and in that capacity the Utah Court is entitled to legislative

immunity.  This court agrees.

In Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719 (1980), the United States Supreme Court held that justices of the Virginia Supreme Court enjoyed legislative immunity from a § 1983 claim that was based on the Virginia Court's rules governing the conduct of attorneys.  The Supreme Court held that when promulgating these rules, the justices of the Virginia Supreme Court were acting in a legislative capacity and were, therefore, entitled to legislative immunity.  Id. at 734.

Following the United States Supreme Court's rationale in Consumers Union, this court similarly concludes that the Utah Supreme Court is entitled to absolute legislative immunity in this case.  Article VIII, Section 4 of the Utah Constitution empowers the Utah Supreme Court to adopt rules of procedure, such as Rule 64D, to be used in the courts of the state.  When acting pursuant to this rule-making authority, the Utah Supreme Court acts in a legislative capacity and is entitled to legislative immunity.  See id.; see also Abick v. Michigan, 803 F.2d 874, 877-78 (6th Cir. 1986) (concluding that the Michigan Supreme Court's promulgation of rules of practice and procedure was a legislative activity and therefore the justices were entitled to legislative immunity).  Accordingly, the Utah Supreme Court's Motion to Dismiss is granted.

**D.  Oxford Management's Motion to Dismiss**

Finally, plaintiff claims that in attempting to collect overdraft fees on behalf of U.S. Bank defendant Oxford Management violated California Civil Code 1788.10 et seq. (California's statue codifying and adopting protections similar to the Fair Debt Collections Practices Act, 15 U.S.C. § 1692b et seq.)  Oxford Management responded with a motion to dismiss pursuant to

Rule 12(b)(2) of the Federal Rules of Civil Procedure, asserting that plaintiff's claim against Oxford Management must be dismissed because the court lacks both subject matter jurisdiction and personal jurisdiction over Oxford Management.

### Subject Matter Jurisdiction

To establish subject matter jurisdiction in a federal court, a plaintiff must show that the case arises under a federal question or appropriate diversity among the parties. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005). According to 28 U.S.C. § 1331, a federal court has original subject matter jurisdiction over civil cases arising under the Constitution or other federal laws. According to 28 U.S.C. § 1332, a federal court has original jurisdiction over cases where the parties are citizens of different states and the amount in controversy exceeds $75,000. In this case, plaintiff appears to concede that the claim against Oxford is not a federal question and does not satisfy diversity jurisdiction requirements. Instead, plaintiff argues that the court should exercise supplemental jurisdiction over the state law claim against Oxford, pursuant to 28 U.S.C. § 1367, because related federal claims are pending against other parties. (Pl.'s Opp'n at 14.)

Given the court's dismissal of all of the claims against U.S. Bank, the West Valley City Justice Court, and the Supreme Court of the State of Utah, there are no longer any federal claims pending against any of the defendants in this action. Additionally, the court notes that plaintiff's claim against Oxford is largely independent of the numerous claims against the other defendants as the claim against Oxford is based exclusively on California state law and whether Oxford violated the California Civil Code in its debt collection of negative balance fees. Given these

circumstances, the court finds no basis upon which to exercise supplemental jurisdiction. Because the court lacks subject matter jurisdiction over plaintiff's claim against Oxford Management, Oxford Management's Motion to Dismiss is granted.

### Personal Jurisdiction

Moreover, even if there were subject matter jurisdiction, plaintiff has failed to satisfy this court that it has personal jurisdiction over Oxford Management. Bell Helicopter Testron, Inc. v. Heliqwest Intern., Ltd., 385 F.3d 1291, 1295-97 (10th Cir. 2004). First, plaintiff has failed to satisfy this court that Oxford Management has contacts with Utah sufficient to establish specific personal jurisdiction. According to plaintiff's complaint, the alleged wrongful actions giving rise to this litigation that bear any relationship to Utah do not involve Oxford Management. Oxford was retained after the Utah judgment and garnishment issued, and was retained for the sole purpose of collecting the negative balance fees plaintiff had accrued. To that end, Oxford Management, a Michigan Corporation, sent a letter to California demanding payment from a California resident. And, as perhaps further indication of the lack of any meaningful Utah connection, plaintiff's sole cause of action against Oxford Management is based on an alleged violation of the California Civil Code. Additionally, plaintiff has failed to satisfy the court that Oxford Management is conducting continuous and systematic general business in Utah sufficient to satisfy general jurisdiction. Plaintiff has failed to allege that Oxford Management has any clients or employees in Utah, and has failed to allege that Oxford does sufficient business within the State of Utah to justify the imposition of general jurisdiction in this matter.

**E. Plaintiff's Motion for Substitution of Parties**

On July 1, 2010, after the majority of the foregoing motions to dismiss had been filed and briefed, plaintiff filed a "Motion for Substitution of Parties" pursuant to Federal Rule of Civil Procedure 25(a), based on the death of plaintiff Richard Walton. The motion proposes to "substitute Plaintiff's successors Richard E. Walton Jr., Deborah L. Kowalczyk, and Catherine S. Timme, the sole surviving children and heirs of Richard Walton" as the named plaintiffs in this case. (Dkt. No. 49.)

Defendant U.S. Bank, joined by defendant West Valley City, opposed the substitution arguing that Fed. R. Civ. P. 25(a) does not provide for automatic survival of claims, but merely describes the method by which the original action may proceed *if* the right survives. See Robertson v. Wegmann, 436 U.S. 584, 587 n.3 (1978). According to U.S. Bank, Utah survivorship statutes control the question of whether plaintiff's federal and state claims survive his death, and under Utah law all of plaintiff's claims are extinguished with the exception of his breach of contract claim. (Dkt. No. 53.)

Having granted each of the foregoing motions to dismiss, the plaintiff's motion to substitute has been rendered effectively moot. However, to the extent any viable claims remain, the court finds that Utah law would likely control, as Utah has the most significant relationship to the matter in dispute, and therefore the claims would not be transferrable for the reasons stated in U.S. Bank's Memorandum in Opposition to Motion for Substitution of Parties. (Dkt. No. 53.)

## CONCLUSION

For the foregoing reasons, U.S. Bank's Motion to Dismiss is GRANTED; the West

Valley Justice Court's Motion to Dismiss is GRANTED; the Supreme Court of the State of Utah's Motion to Dismiss is GRANTED; and Oxford Management Services' Motion to Dismiss is GRANTED.  Plaintiff's Motion for Substitution of Parties is DISMISSED.

DATED this 30th day of September, 2010.

_____
Dee Benson
United States District Judge